| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA     §
                                        §
*versus*                              §         CASE NO. 4:11-CR-127 (10)
                                        §
TERRANCE BOOKER              §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Terrance Booker's ("Booker") *pro se* Motion for Compassionate Release (#993), wherein he requests compassionate release due to medical circumstances. Also before the court are Booker's *pro se* Motions for Extension of Time and Appointment of Counsel (#s 1003, 1004), wherein he seeks an extension of time to file a reply to the Government's response to his compassionate release motion and the appointment of counsel to assist him in requesting compassionate release. The Government filed a response in opposition to Booker's motion for compassionate release (#998).[1] United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Booker's motion for compassionate release. Having considered the pending motions, Probation's recommendation, the Government's response, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.    Background

On January 11, 2012, a grand jury in the Eastern District of Texas returned a First Superseding Indictment charging Booker and 11 co-defendants with Conspiracy to Possess with

---

[1] In a letter motion, dated October 19, 2020, Booker asks the court to grant him an extension of time to file a reply to the Government's response (#s 1003, 1004). "The court need not wait for the reply . . . before ruling on the motion." LOCAL RULE CR-47(b)(2). Therefore, the court denies Booker's request for an extension of time to file a reply.

the Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846, from June 2006 to January 2012.  The court held a jury trial, commencing on September 10, 2012.  On September 14, 2012, the jury returned a verdict, finding Booker guilty of the marijuana-trafficking conspiracy.  On February 22, 2013, the court sentenced Booker to 280 months' imprisonment, followed by a 5-year term of supervised release.  His sentence of imprisonment was subsequently reduced to 188 months on August 27, 2015.  Booker's conviction and sentence were affirmed on appeal by the United States Court of Appeals for the Fifth Circuit on May 19, 2016.  Booker is currently housed at Federal Correctional Institution Terre Haute ("FCI Terre Haute"), located in Terre Haute, Indiana.  His projected release date is December 29, 2024.

II.   Appointment of Counsel

Booker requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court, however, may, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Booker is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  While Booker asserts that appointment of counsel is warranted because he is indigent, he submits no proof of his indigency; however, the court notes that he was represented by appointed counsel at trial and on appeal.

Nevertheless, Booker provides no basis for the court to conclude that the appointment of counsel would help him obtain relief.  A motion "for compassionate release is not particularly

3

complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  Here, Booker is a United States citizen, who grew up in Indianapolis, Indiana, graduated from high school, and, according to his Presentence Investigation Report ("PSR"), was employed as a certified nurse's assistant from 2007 until his arrest in 2011. Although his motion is organized and literate, Booker has failed to raise any nonfrivolous or potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel.  Thus, the court finds that the discretionary appointment of counsel is not warranted.  *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Booker's request for appointment of counsel is denied.

III.     Compassionate Release

On December 21, 2018, President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a

> determination has been made by the Director of the [BOP] that the defendant is not
> a danger to the safety of any other person or the community, as provided under
> section 3142(g); and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate

release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Booker has exhausted his administrative remedies.  On July 25, 2020, Booker submitted a written request for compassionate release to B. Lammer ("Warden Lammer"), the warden of the facility where Booker is housed.  BOP Clinical Director, W. Wilson, M.D. ("Dr. Wilson"), reviewed Booker's request and noted in his memorandum to Warden Lammer that Booker did not meet the criteria necessary for compassionate release.  Specifically, Dr. Wilson concluded that Booker did not have a terminal medical condition because he did not:  (1) have a terminal, incurable disease with a life expectancy of 18 months or less; or (2) have a disease with an end of life trajectory.  Dr. Wilson further asserted that Booker did not have a debilitated medical condition because he did not have a disability that made him unable to carry on or provide limited self-care or, otherwise, confined him to a bed or chair.  Lastly, Dr. Wilson determined

6

that Booker, age 43, was not an elderly inmate with a medical condition because, among other things, he was under the age of 65.  On September 8, 2020, Warden Lammer denied Booker's request for compassionate release, concluding that he was not terminally ill and did not have a condition that substantially diminished his ability to function in a correctional facility.  Although Booker complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.");  *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the

policy statements issued by the Commission.  18 U.S.C. § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

In the instant motion, Booker contends that he is eligible for compassionate release due to his medical condition.  Specifically, in his request to the warden, Booker states that he is "suffering from hypertension (high blood pressure) that has [put] unnecessary stress [on] my heart and kidneys that ultimately will lead to kidney damage-failure."  He further asserts that as a result of his health issues, he is more susceptible to COVID-19.  Booker claims that because of his medical condition, coupled with the risk of COVID-19, he has presented extraordinary and compelling reasons that warrant his compassionate release.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

According to his PSR, prepared in December 2012, Booker reported that he was in good health, other than having a sports-related injury to his right knee that caused him pain and swelling

---

need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

in his leg.  His body mass index was 25.1, making him just slightly overweight.[2]  Booker's health, however, has apparently declined somewhat since then.  As set forth in his medical records, Booker currently suffers from benign essential hypertension and is prescribed Amlodipine and Lisinporil to control the condition.  At a medical appointment on March 31, 2020, David Lukens, M.D. ("Dr. Lukens"), discussed with Booker that blood pressure control is associated with the reduction of cardiovascular risks.  Dr. Lukens also encouraged Booker to comply with medical therapy, including regularly taking his medicine, and to take conservative measures, emphasizing the importance of cardio exercise.  Importantly, while Booker asserts that his hypertension puts stress on his heart and kidneys, his medical records do not indicate that he presently has any heart or kidney problems.  His records merely reflect that Dr. Lukens warned Booker that the development of "LVH [left ventricular hypertrophy]" is often related to sub-optimal blood pressure control.

In addition to hypertension, Booker's medical records reflect that he continues to experience ongoing knee and lower leg pain.  He is now obese, with a body mass index of 33.2, which may increase his COVID-19 risk factors.  Nevertheless, Booker is classified by the BOP as a Care Level 1 inmate.  According to BOP's Clinical Practice Guidance, "Care Level 1 inmates are less than 70 years of age and are generally healthy," but "[t]hey may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."  Consequently, Booker's medical summary does not meet the criteria listed above.  None of his medical conditions is terminal or substantially diminishes his ability to provide self-care.  In fact, BOP records reveal

---

[2] The PSR shows that Booker was 5 feet, 7 inches tall and weighed 160 pounds.  According to the Centers for Disease Control and Prevention, the normal weight range for someone his height is 118 to 159 pounds, making him only one pound beyond the normal range.

that Booker has no medical restrictions, is assigned regular duty work, is cleared for food service, and was recently assigned to serve as the FCI Administrative Clerk. Booker, therefore, has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Even if Booker's medical conditions constituted an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Furthermore, granting Booker compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* In the instant case,

releasing Booker after he has served only 9 years of his almost 16-year sentence would similarly minimize the impact of his crime and the seriousness of his offense.

Booker's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Booker for any "other" reason.  In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Booker's situation.  Booker maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance

11

himself from other inmates.  Booker expresses concern regarding the spread of COVID-19 among the prison population.   Nevertheless, as of November 4, 2020, the figures available at www.bop.gov list 11 inmates (out of a total inmate population of 1,093) and 4 staff members at FCI Terre Haute as having confirmed positive cases of COVID-19, 131 inmates and 15 staff members who have recovered, and 1 inmate who has succumbed to the disease.  Thus, it appears that the facility where Booker is housed is handling the outbreak appropriately and providing adequate medical care.

Although Booker expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Booker, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *Vasquez*, 2020 WL 3000709, at *3 ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions,

is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Booker has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence and release him from imprisonment.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Booker's conviction stems from his participation in a drug trafficking and money laundering conspiracy. As part of the conspiracy, Booker's co-defendant, Cruz Lopez-Acevedo, supplied marijuana from Mexico to distributors in Texas and Indiana. Booker was one of the primary distributors in Indiana. According to his co-defendant, Eric Pieper, Booker received a total of 2,360 pounds (1,070.47 kilograms) of marijuana from the supplier. Booker also operated a stash house on behalf of the drug-trafficking organization until he was arrested. Police found marijuana in Booker's possession on multiple occasions.

On June 25, 2008, Booker was stopped for a traffic violation, and officers found two large bags containing 446 grams of marijuana and $600.00 in United States currency. On April 10, 2009, Matt Jones ("Jones") was stopped for a traffic violation, and police discovered that he had 14 pounds of marijuana and 2 handguns in his vehicle. Jones stated that Booker provided him with the marijuana and weapons. Later that day, police searched Booker's residence, recovering 66

pounds of marijuana, 11 tablets of MDMA, 5 tablets of benzylpiperazine, and a loaded .40 caliber handgun.  Police also found 17 boxes lined with carbon paper, each of which contained at least 22 pounds of marijuana at one time.  Some of these boxes were still full with compressed bales of marijuana, others contained smaller bags of marijuana that were ready for sale, and the remainder were empty.  On December 30, 2010, police stopped Booker for a traffic violation and found that he possessed five pounds of marijuana and $500.00 in United States currency in his vehicle.  Booker admitted to officers that he had been selling marijuana for several years. According to the PSR, Booker was held responsible for between 1,000 and 3,000 kilograms of marijuana.

Booker has an extensive criminal history, including prior convictions for theft, possession of marijuana, intimidation, domestic battery, possession of a controlled substance, operating a vehicle while intoxicated, and dealing in marijuana.  Booker's conviction for intimidation and domestic battery stemmed from his physically assaulting the mother of some of his children and threatening to kill her for calling the police.  In addition, he failed to comply with previous terms of probation and was on probation for two offenses at the time of his offense of conviction. Further, Booker has a lengthy history of substance abuse, using alcohol and marijuana on a daily basis from shortly after his high school graduation until his arrest in 2011 at age 34.  In view of the nature and circumstances of his offense of conviction, his extensive criminal history, and his long history of substance abuse, the court cannot conclude that Booker would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures

in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 7,717 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Ambriz v. United States*, ___ F. Supp. 3d ___, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes

15

that police officers protecting the public face an increased risk from COVID-19 and cannot avoid

exposure to the virus, with their numbers dwindling as officers who contract the virus become ill

or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will

behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United

States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Booker's track record is

similarly a poor one.

In short, Booker has failed to satisfy his burden of showing the necessary circumstances

to warrant relief under the statutory framework to which the court must adhere.  *See United States

v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the

rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not

sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*,

455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has

"carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every

prisoner at risk of contracting COVID-19 because the Court would then be obligated to release

every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

16

IV.     Conclusion

Consistent with the foregoing analysis, Booker's Motion for Compassionate Release (#993) and Motions for Extension of Time to File a Reply and Appointment of Counsel (#s 1003, 1004) are DENIED.

SIGNED at Beaumont, Texas, this 4th day of November, 2020.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE